**PSC INC., Plaintiff and Counterclaim–Defendant,**

v.

**SYMBOL TECHNOLOGIES, INC., Defendant and Counterclaim–Plaintiff.**

No. 96–CV–6152T.

United States District Court, W.D. New York.

Oct. 22, 1998.

William Brueckner, J. William Reeves, Justin Vigdor, Boylan, Brown, Code, Fowler, Vigdor & Wilson, LLP, Rochester, NY, James H. Shalek, Gregory Stephenson, Lyon & Lyon, P.C., White Plains, NY, for PSC Inc., plaintiff.

Eric J. Lobenfeld, Chadbourne & Parke, New York City, Arnold Sprung, Sprung, Horn, Kramer & Woods, Tarrytown, NY, for Symbol Technologies, Inc., consolidated plaintiff.

Kenneth A. Payment, Rochester, NY, Eric J. Lobenfeld, Chadbourne & Parke, New York City, Arnold Sprung, Nathaniel Kramer, Ira Schaefer, Sprung, Horn, Kramer & Woods, Tarrytown, NY, for Symbol Technologies, Inc., defendant.

James H. Shalek, Lyon & Lyon, White Plains, NY, for Data General Corporation, consolidated defendant.

William Brueckner, J. William Reeves, Justin Vigdor, Boylan, Brown, Code, Fowler, Vigdor & Wilson, LLP, Rochester, NY, James H. Shalek, Lyon & Lyon, White Plains, NY, for PSC Inc., counter-defendant.

## DECISION AND ORDER

TELESCA, District Judge.

### INTRODUCTION

Plaintiff PSC Inc., ("PSC"), brings this action pursuant to the Sherman Act, the Lanham Act, and various state and federal laws seeking a declaratory judgment that a number of patents held by Defendant Symbol Technologies, Inc., ("Symbol"), are invalid, or alternatively, that PSC has not infringed those patents. Plaintiff also seeks damages for defendant's alleged illegal anticompetitive behavior in attempting to monopolize the markets for hand-held laser scanners and portable integrated scanning terminals. PSC also seeks a declaration that it did not anticipatorily repudiate or breach two contracts that the parties entered into in 1991 and 1995 respectively.

In its Amended Counterclaim, Symbol contends, inter alia, that PSC has infringed a number of Symbol's patents, has breached the 1991 and 1995 contracts, and has failed to pay royalties due Symbol under those contracts. The parties have represented to the court that the patent validity and infringement issues have been settled, and that only the issues relating to the amount of royalties allegedly owed by PSC to Symbol under the 1991 and 1995 contracts remain.

Both parties have moved for partial summary judgement with respect to the amount of royalties, if any, Symbol may collect from the plaintiff. PSC contends that because Symbol has engaged in misuse of the patents under which PSC pays royalties, Symbol is precluded from collecting royalties under those patents. Symbol cross-moves for partial summary judgment seeking a declaration that it has not engaged in patent misuse.

Symbol has also filed two discovery motions. First, Symbol seeks an Order compelling SC to release sales information regarding products PSC produced subject to its 1991 licensing agreement with Symbol. Symbol claims that it needs this information to calculate its damages for lost profits that were allegedly sustained due to PSC's failure to fully pay royalties. That failure also allegedly resulted in PSC's ability to undercut Symbol's prices in the marketplace. Second, Symbol moves for an Order allowing it to supply confidential information to an economics expert, Dr. Summath Addanki, ("Dr.Addanki") who has been retained for purposes of determining Symbol's damages. PSC objects to the designation of this expert on grounds that it is untimely, and that in any event, Symbol is not entitled to the discovery documents to be examined by Dr. Addanki.

### BACKGROUND

In order to manufacture hand-held laser scanners, PSC licenses two patents from Symbol, U.S. Patents 4,387,297 ("the '297 patent"), and 4,593,186 ("the '186 patent"). The licensing agreement with Symbol provides that PSC shall pay royalties of 15% to Symbol on the "Net Sales Value of all Royalty Bearing PSC Products, sold, or leased by PSC (or its successor) commencing on the Effective Date and continuing until the last to expire or otherwise terminate of any issued patents included within the Licensed Symbol Patent Rights granted in this Agreement...." *See* § 5.1 of the March 6, 1991 Licensing Agreement between PSC and Symbol (hereinafter "the 1991 agreement"). "Licensed Symbol Patent Rights" are defined in relevant part as the '297 and '186 patents. *See* 1991 Agreement at § 1.9. "Royalty Bearing PSC Products" are defined as:

any product of PSC or its successor ... which is covered by a valid and subsisting claim or claims of the Licensed Symbol Patent Rights as manufactured or sold, **or when installed, or which when installed (as a new installation or for conversion of an existing installation), is used or to be used in practicing any claim or claims of the Licensed Symbol Patent Rights.**

*See* 1991 Agreement at § 1.17. (emphasis added). Pursuant to this language, Symbol contends that it is owed a royalty from PSC whenever PSC sells a scan engine to a consumer who uses the engine in any product that practices a claim of either the '297 or '186 patents.

One of PSC's largest customers is Telxon, Incorporated ("Telxon"). Unlike PSC, Telxon does not manufacture hand-held laser

scanners or scan engines but manufactures portable integrated scanning terminals, ("integrated terminals") which, like hand-held scanners, read bar codes. Integrated terminals also contain a small computer which is capable of processing and using the information it scans, as opposed to a hand-held scanner, which merely sends the information it reads to a separate computer.

Like PSC, Telxon also licenses a number of patents from Symbol which are necessary to the manufacture of integrated terminals. Among the 5 patents licensed to Telxon are the '297 and '186 patents, which, according to counsel for Symbol, cover technology that is indispensable to the manufacture of both hand-held scanners and integrated terminals. *See* § 1.19 of the September 30, 1992 Agreement between Symbol and Telxon, attached as Exhibit H to the September 11, 1998 Declaration of Victor Souto. PSC claims that because Symbol collects a royalty from Telxon under the '297 and '186 Patents, Symbol's attempt to collect a royalty also from PSC under the same patents on the same product constitutes patent misuse, and renders the '297 and '186 patents unenforceable.

Symbol explains that its agreement with PSC was a negotiated agreement that was voluntarily entered into and, therefore, PSC cannot claim patent misuse.

### DISCUSSION

### I. *Summary Judgment Motions*

PSC moves for partial summary judgment on the issue of damages to which Symbol would be entitled should it prove all or any part of its case against PSC. PSC contends that Symbol is precluded from collecting any royalties under the '297 or '186 patents from April 1, 1996 (the day on which the Complaint in this action was filed) through the present because Symbol has misused those patents by collecting a royalty from two different parties for a single use of the same patents.

Symbol cross-moves for partial summary judgment on the issue of damages seeking a declaration from the court that as a matter of law it did not engage in patent misuse, and therefore is entitled to all royalties under

the '297 and '186 patents from April 1, 1996 forward. As a patent licensor, Symbol claims that it may collect royalties on the licensee's sale of goods regardless of whether or not those goods are covered by the licensed patents, provided that the licensee voluntarily agrees to pay such royalties.

### A. *Standard for Summary Judgment.*

The Federal Rules of Civil Procedure provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### B. *Patent Misuse.*

■ "The doctrine of patent misuse is a judicially developed doctrine that has been used by courts of equity to prevent a patentee from extending the 'monopoly' granted by the patent laws beyond its legal bounds." Patricia Martone, William Gilbreth, Richard Gervase, Jr., *The Patent Misuse Defense– Does it Still have Vitality?*, Practicing Law Institute Order No. G4–4037, June, 1998. Patent misuse is an affirmative defense to a claim of patent infringement or a claim for unpaid royalties, which if proven, renders the misused patent unenforceable from the date on which notice of the alleged misuse was given, until the misuse is cured. *See Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co.*, 112 F.3d 1561, 1568 (1997) (licensee required to provide notice to licensor of reason for licensee's refusal to pay royalties); *United States Gypsum Co. V. National Gypsum Co.*, 352 U.S. 457, 465, 77 S.Ct. 490, 1 L.Ed.2d 465 (1957) (patent unenforceable until misuse is "purged").

■ To establish the defense of patent misuse, PSC must demonstrate that "[Symbol] has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed.Cir.1986) (quoting *Blonder–Tounge Lab., Inc. v. University of Illinois Found.*,

402 U.S. 313, 343, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)); *Virginia Panel Corp. v. MacPanel Co.,* 133 F.3d 860, 868 (Fed.Cir.1997).

■ If the alleged misuse of the patent has "the effect of extending the patentee's statutory rights and does so with an anti-competitive effect, that [conduct] must be analyzed in accordance with the 'rule of reason.'" *Virginia Panel,* 133 F.3d at 869 (citing *Mallinckrodt,* 976 F.2d at 708). "Under the rule of reason, 'the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect.'" *Virginia Panel,* 133 F.3d at 869 (quoting *State Oil Co. v. Kahn,* 522 U.S. 3, 118 S.Ct. 275, 279, 139 L.Ed.2d 199 (1997)).

**C.** ***PSC has established that Symbol engaged in patent misuse with respect to the '297 and '186 patents.***

■ PSC essentially claims that Symbol has misused its patents by collecting royalties from two licensees of the patent rights for the same use of those rights. In order to establish this defense, PSC must demonstrate: 1) that Symbol collected royalties under the '297 and '186 patents from Telxon; 2) that Symbol also collected royalties under the '297 and '186 patents from PSC; 3) that the royalties collected from PSC and Telxon were for the same product; 4) that collection of double royalties impermissibly extends either the physical or temporal scope of the patent grant with anticompetitive effect; and 5) that the collection of royalties from Telxon and PSC for the same product imposes an unreasonable restraint on competition. I find PSC has sustained its burden and has made such a showing.

**1.** ***Symbol collected royalties from Telxon under the '297 and '186 patents.***

■ It is undisputed that Symbol licenses five patents to Telxon, and that it collects a royalty of 7½ from Telxon under their licensing agreement. It is also undisputed that the '297 and '186 patents are among the five

patents licensed by Symbol to Telxon. Symbol claims that the remaining three patents are the essential patents for which Telxon pays royalties, and that the "license [that Telxon has] under the '297 and '186 patents has no impact whatsoever on the amount of royalties Telxon pays...." *See* Defendant's Memorandum of Law In Opposition to PSC's Motion for Partial Summary Judgment at p. 7. The important fact remains, however, that the agreement under which Telxon pays royalties to Symbol specifies that the royalties paid are for the license rights *to all five* patents, two of which are the '297 and '186 patents. *See* ¶¶ 1.19, 4.1, 6.2 of the September 30, 1992 Agreement between Symbol and Telxon, submitted as Exhibit "H" to the Declaration of Victor Souto. Accordingly, I find that PSC has established that Telxon pays royalties under the '297 and '186 patents.

**2.** ***Symbol Collected royalties from PSC under the '297 and '186 patents.***

Under the 1991 licensing agreement between PSC and Symbol, PSC agreed to pay Symbol a royalty under the '297 and '186 patents for any product manufactured by PSC that was covered by a valid claim or claims of those patents. Moreover, PSC also agreed to pay a royalty to Symbol for any product manufactured by PSC that when installed in another product, was used or would be used in practicing any claim of the '297 or '186 patents. Therefore, under the terms of the 1991 agreement, I find that PSC pays a royalty to Symbol under the '297 and '186 patents.

**3.** ***The royalties collected by Symbol from PSC and Telxon cover the same product.***

■ Symbol contends that while it may have collected royalties from both Telxon and PSC under the same patents, it did not collect royalties for the same product. Specifically, Symbol claims that the royalties collected from Telxon under the '297 and '186 patents were from the sales of integrated terminals (a product that PSC does not even manufacture) whereas the royalties collected from PSC were from sales of its scan engines, a product that Telxon does not manu-

facture. That argument ignores the facts because PSC does not pay royalties on all scan engines *per se,* but only on its scan engines that, "when installed ... [are] used or to be used in practicing any of the claims of the ['297 or '186 patents]." Thus, PSC pays royalties on products that practice any claim of either the '297 or '186 patents *and* use a PSC scan engine.

Telxon also pays a royalty for a product that practices the '297 and '186 patents *and* uses a PSC scan engine: its integrated terminal. And while it is true that Telxon would pay a royalty under the '297 and '186 patents even if it did not use a PSC scan engine, that fact does not absolve Symbol of conduct that constitutes misuse. Symbol collects a royalty from PSC for a product that uses a PSC scan engine and practices (under a license from Symbol) the '297 or '186 patents, and it also collects a royalty from Telxon for the same product.

### 4. *Collection of Double Royalties Broadens the Scope of the Patent with Anticompetitive Effect.*

To establish the defense of patent misuse, PSC must demonstrate that Symbol's conduct has "impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Windsurfing,* 782 F.2d at 1001. (internal quotation marks omitted). I find that collection of royalties from two parties for the same product improperly broadens the scope of the rights Symbol has under its patents.

### a. *Collection of Double Royalties Broadens the Scope of the Patent Grant.*

Symbol contends that it may lawfully condition a royalty payment on the sale of unpatented goods where such a condition is voluntarily agreed to by the parties, and is made for the convenience of the parties. In support of its position, Symbol cites *Engel Industries, Inc. v. Lockformer Co.,* 96 F.3d 1398 (Fed.Cir.1996) in which the Federal Circuit Court of Appeals upheld a license agreement under which plaintiff was required to pay a royalty on unpatented goods that "were designed for use in the practice of the [patented] invention." *Engel,* 96 F.3d at 1408. In that case, however, the agreement

specifically stated that the royalty payments made on the unpatented goods were "a convenient means for measuring the value of the license." *Id.* In the instant case, there is no such language qualifying the nature of the royalty payment made by PSC for scan engines used in products that practice claims of the '297 or '186 patents. The plain language of the agreement provides that PSC is to pay a royalty on *all* products that it manufactures that, when installed in other products, are used in the practice of the '297 or '186 patents.

Because PSC paid a royalty for the license of the patents rights under the '297 or '186 patents, Symbol's rights under those patents were extinguished, and Symbol forfeited its right to collect any additional royalties on any product that practiced any claim under the '297 or '186 patents *and* used a PSC scan engine. Its attempts to collect royalties from two parties for the same product violates the exhaustion doctrine, and impermissibly extends the scope of the patent grants. *See Intel Corp. v. ULSI Sys. Technology, Inc.,* 995 F.2d 1566, 1568 (Fed.Cir.1993) ("authorized sale of patented product places that product beyond the reach of the patent"). The purpose of the exhaustion doctrine is to "prevent[ ] patentees from extracting double recoveries for an invention...." *Cyrix Corp. v. Intel Corp.,* 846 F.Supp. 522, 539 (E.D.Tex.), *aff'd* 42 F.3d 1411 (Fed.Cir.1994).

### b. *Anticompetitive Effect.*

The collection of double royalties on the same product has a strong anticompetitive effect on the market for scan engines. Manufacturers of hand-held laser scanners and integrated terminals are required to pay twice for a single license under the '297 and '186 patents when they purchase scan engines from PSC: once for the right to manufacture those items pursuant to their own license agreements with Symbol, and again for a PSC scan engine which carries an increased price (or decreased profit margin for PSC) because PSC must also pay a royalty to Symbol under the '297 and '186 patents. The anticompetitive effects of such an arrangement are made even clearer by the fact that Telxon, pursuant to its agreement with

Symbol, may take a credit against its royalty obligations to Symbol whenever it purchases scan engines from Symbol, but conversely, must, in effect, pay double royalties when it purchases scan engines from PSC.

### 5. Collection of Double Royalties imposes an unreasonable restraint on competition.

Once a practice is found to have the effect of extending the patentee's statutory rights and does so with an anticompetitive effect, a question of fact remains as to whether that practice imposes an unreasonable restraint on competition. In the instant case, however, because the relevant facts are not in dispute, and no reasonable finder of fact could find otherwise, I find that Symbol's collection of a double royalty from PSC and Telxon constitutes an unreasonable restraint on competition.

■ Whether a practice constitutes an unlawful restraint of trade requires the application of a "rule of reason" standard. *Virginia Panel*, 133 F.3d at 869. Under this rule, the legality of the alleged restraint is determined by whether or not the restraint merely regulates competition, or whether it suppresses, or even destroys competition. *F.T.C. v. Indiana Federation of Dentists*, 476 U.S. 447, 458, 106 S.Ct. 2009, 90 L.Ed.2d 445 (1986) (quoting *Chicago Board of Trade v. United States*, 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed. 683 (1918)). While the party challenging the alleged conduct has the burden of demonstrating that the conduct unfairly restrains competition, it is not necessary to prove that the conduct would constitute an independent violation of the antitrust laws. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 140–141, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). Application of the rule of reason is "often erroneously assumed to require refined fact finding and balancing[,] . . . [and] some rule-of-reason cases can be disposed of merely on the basis of the parties' arguments and, more often, on the basis of a limited summary judgment record." 7 Phillip E. Areeda, *Antitrust Law* § 1508 (1986).

■ The collection of two royalties by Symbol for the same product is not the type of restraint that merely regulates or promotes competition. Instead, it has the effect of suppressing competition by increasing the manufacturing cost of a hand-held scanner or an integrated terminal when a PSC scan engine is used in those products. The requirement that PSC pay a royalty on scan engines that are sold to customers who are also obligated to pay royalties to Symbol under the same patents obligates PSC to either increase the cost of its engine or decrease its profit margin. Either result unfairly restrains competition in a market that is essentially controlled by Symbol because it holds patents that are necessary to the manufacture of scan engines, hand held laser scanners, and integrated terminals. Accordingly, I find that the collection of two royalties on the same product under the same patents constitute patent misuse.

## II. Discovery Motions

### A. Motion to Compel

■ Symbol moves for an Order compelling PSC to respond to Document requests 78–89. Those requests seek documents relating, *inter alia* to PSC's monthly revenues and costs associated with producing hand-held laser scanners and scan engines. Symbol seeks this information to determine whether it (Symbol) lost profits as a result of PSC's alleged failure to pay full royalties, and if so, the amount of lost profits.

Symbol's entitlement to such damages is, at this point in the litigation, speculative. Should Symbol establish that it is entitled to collect additional royalties, the issue of whether or not PSC's failure to pay those royalties *might* become relevant, and Symbol may apply for an Order to compel production at that time. However, because the information sought by Symbol is highly sensitive, I deny Symbol's motion to compel without prejudice.

### B. Motion for Relief under the Protective Order.

Symbol seeks a declaration that it may supply confidential discovery material to one of its economics experts, Dr. Sumanth Addanki. Symbol's motion is granted. PSC's

objection on the basis of timeliness of Dr. Addanki's designation is moot since no trial date has been set. Symbol may disclose information designated as confidential to Dr. Addanki, who is subject to the terms of the previously entered Order of Confidentiality.

### CONCLUSION

Because Symbol has engaged in patent misuse with respect to the '297 and '186 patents by attempting to collect double royalties on the same product under those patents, I hereby grant plaintiff's partial motion for summary judgment, deny defendant's motion for summary judgment, and find that the '297 and '186 patents are unenforceable as against PSC from April 1, 1996, the day on which Symbol was notified of the misuse, through the present, and until such misuse is purged. Accordingly, PSC is not obligated to pay royalties to Symbol under those patents pursuant to either its 1991 or 1996 licensing agreements for products manufactured or sold on or after April 1, 1996. Defendant's motion for relief under the protective order is granted, and defendant's motion to compel is denied without prejudice.

ALL OF THE ABOVE IS SO ORDERED.